NO. 07-03-0538-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 14, 2005

_____

TONY J. ROMO, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402,096; HON. BRAD UNDERWOOD, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL, JJ.[1]

Tony J. Romo, Jr. (appellant) appeals his conviction for aggravated sexual assault. After considering his nine issues, we affirm the judgment for the reasons which follow.

*Issues One and Two – Admission of DNA Evidence*

Appellant initially contends that the trial court erred in admitting DNA evidence developed from a blood sample taken while he was in prison. This is purportedly so

---

[1]Then Chief Justice Phil Johnson, who sat on the panel at oral argument, did not participate in this decision.

because the sample was taken in violation of his constitutional rights to be free of unreasonable searches and seizures. We overrule the issues.

The sample was impermissibly obtained, according to appellant, for two reasons. First, the process utilized purportedly violated §411.148(a) of the Texas Government Code and, second, a federal appellate court struck down a like procedure in *United States v. Kincade*, 345 F.3d 1095 (9th Cir. 2003).[2] The procedure at issue involves the drawing of blood from convicted felons while in prison. The specimen is then used to create a DNA record of the felon.

We address the second reason proffered by appellant first. While the United States Court of Appeals for the Ninth Circuit, in *Kincade*, did initially hold unconstitutional a procedure wherein blood was drawn from convicted felons to create a DNA record, that opinion is no longer authoritative. It was withdrawn by the same court, and another was placed in its stead. And, through the latter, it held that "compulsory DNA profiling of qualified federal offenders is reasonable under the totality of the circumstances" and that "we today align ourselves with every other state and federal appellate court to have considered these issues – squarely holding that the DNA Act satisfies the requirements of the Fourth Amendment." *United States v. Kincade*, 379 F.3d 813, 839 (9th Cir. 2004) (en banc). Given that the foundation for appellant's argument no longer exists, we reject appellant's argument.

---

[2]Section 411.148(a) of the Government Code states: "[a]n inmate serving a sentence for a felony in the institutional division shall provide one or more blood samples or other specimens for the purpose of creating a DNA record." TEX. GOV. CODE ANN. §411.148(a) (Vernon 2005).

Regarding his first reason, appellant admits that he was convicted and sent to prison for another offense. However, he appealed that conviction, and this court had yet to issue its mandate finalizing the conviction when his blood was drawn by the prison officials. Furthermore, because mandate had yet to issue, he could not be considered as "serving a sentence" for purposes of §411.148(a), appellant concludes. Yet, in making this argument, appellant did not address the dictates of art. 42.09, §6 of the Texas Code of Criminal Procedure. It provides that "[a]ll defendants who have been transferred to the institutional division of the Texas Department of Criminal Justice pending appeal of their convictions . . . shall be under the control and authority of the institutional division for all purposes *as if no appeal were pending.*" TEX. CODE CRIM. PROC. ANN. art. 42.09, §6 (Vernon Supp. 2005) (emphasis added). Given this directive, the State was permitted to treat appellant like a convicted felon even though his appeal had yet to be finalized via the issuance of a mandate.

*Issues Eight and Nine – Suppression of his Confession*

We next address appellant's issues eight and nine for they are generally dispositive of the others. Through them, he complains of the trial court's refusal to suppress his confession. It was subject to suppression, in his view, because he was denied his right to counsel during the execution of the search warrant and his confession was executed after he had attempted to end the interrogation. We overrule the issues.

As to the request for an attorney, appellant cites us no authority (and we know of none) holding that he is entitled to an attorney when officers attempt to execute a search warrant. And, while requesting an attorney may obligate a suspect's interrogators to halt further interrogation, they need only do so until counsel is provided or the suspect himself

3

re-initiates conversation. *Dinkins v. State*, 894 S.W.2d 330, 350-51 (Tex. Crim. App. 1995).

Here, the record contains the following evidence proffered by a police officer who helped execute the search warrant. At the time the warrant was served, appellant requested an attorney. Per that warrant, the officers intended to obtain a blood sample from him. Furthermore, they told appellant that he had no right to an attorney at that point. Instead, appellant was taken to the health department whereat personnel extracted several vials of blood from him. Additionally, neither officer broached with appellant the issue of his providing a statement. Nor did appellant again request counsel. Nonetheless, appellant asked to speak to detective Martinez. The latter and appellant knew each other since they had engaged in prior discussions about other criminal matters. So, his custodians phoned Martinez to see if he cared to meet with appellant. Martinez agreed to do so. Thereafter, the officers drove appellant from the health department to the police station so he and appellant could meet. During that short drive, nothing was said about appellant offering any statement. Nor did appellant again request to speak to legal counsel. And, by the time the group arrived at the station, they had spent approximately 45 minutes together.

Next, when appellant encountered detective Martinez, the two engaged in "small talk." During this exchange appellant informed Martinez about his general situation and the prison in which he was incarcerated. This led to Martinez informing appellant of his *Miranda* rights. Thereafter, appellant provided Martinez with his version of the events, which Martinez transcribed. The transcription, which also contained *Miranda* warnings, was then given to appellant. Appellant was asked to review its contents and place his initials

4

next to each *Miranda* admonition. So too was he asked if he wanted to make any changes. He did ask for clarification about a matter but made no changes. So too did he place his initials next to the warnings and sign the confession before a notary. At no time during the interview did he ask for counsel or request that the proceeding stop. Nor was he denied any basic necessities during the meeting, which lasted less than two hours.

Though appellant contradicted much of what the officers said, the trial court had the discretion to choose which witness to believe. As the sole finder of fact, *Arnold v. State*, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993), it was free to believe or disbelieve any or all of the evidence presented. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). And, we must conclude that evidence appeared before it upon which it could have reasonably determined that while appellant initially requested legal counsel, he also voluntarily and unilaterally re-initiated discussion with the officers after the request. Furthermore, the very same evidence we mentioned above further entitled the trial court to conclude that appellant's statement was 1) voluntarily given without coercion, threat or improper influence and 2) not obtained in breach of any request to halt the interview. This being so, we have no basis to alter the trial court's refusal to suppress the confession and, therefore, overrule both issues eight and nine. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (stating that the trial court's determination will not be overturned if supported by the record, especially when the trial court's findings turn on the witness' credibility and demeanor).

*Issues Three through Seven*

The remaining issues before us deal with appellant's ability to attack the validity of the DNA evidence proffered by the State at trial. They involve appellant's opportunity to

5

secure evidence and expert testimony which may have been used to discredit the accuracy of the DNA evidence used to inculpate him. Assuming *arguendo* that each complaint had merit, we, nonetheless, would find them to fall short of requiring reversal. This is so because of appellant's written statement. It too was admitted into evidence at trial and through it, he confessed to committing the assault. Given his confession to the crime, the DNA evidence was rendered moot. In short, the admissible evidence of his guilt was overwhelming and sufficient to render harmless any mistake made by the trial court *viz* the DNA evidence and appellant's opportunity to rebut it.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

Do not publish.